in the custody of the court, any party interfering with it is punishable by attachment; and ordinarily, by resorting to such remedy, the receiver can adequately protect his estate, and where the case is pressing, the receiver may file a bill in equity to enjoin. Nangle v. Lord Fingall, 1 Hogan, 142. If he brings suit without leave of the court, that fact cannot avail the defendant by way of defense, but the action may be stayed by the court, and will be if brought unjustifiably. And it is not only the right of a receiver, but his duty, to take such action, and to institute legal proceedings, without waiting for leave, when the circumstances of the case require it. Tillinghast v. Champlin, 4 R. I. 173, 188.

Granting all this, it does not follow that a receiver can maintain such an action as the present one. The plaintiff seeks to recover property which never came to his possession, but which had been transferred by the bankrupt to the defendant prior to the commencement of the proceeding in which he was appointed receiver. The action which he has brought is one at law, and can only be maintained upon a legal title. Treating it as an action of trover, it must be brought in the name of the person who had the possession of, or right of possession to, the property at the time of its conversion. A receiver cannot maintain such an action in his own name, though leave would be granted him, in a proper case, to prosecute in the name of the person having the legal title. A receiver of a partnership cannot maintain an action of trover in his own name to recover against a person who has converted assets of the firm before his appointment. He is a mere custodian, and must sue in the name of the firm in whom was the legal right of action. Yeager v. Wallace, 44 Pa. St. 294; Newell v. Fisher, 24 Miss. 392.

The actions which may be brought by receivers in their own name for the protection of property which has come to their custody, or those which may be maintained upon an equitable right, are not to be confounded with those which must be brought by them in the name of another, although the equitable right may be in those whom the receiver represents, and not in the party having the legal estate. When the receiver goes into a court of law, he must stand, if at all, on the legal estate. Merritt v. Lyon, 16 Wend. 405. If he applies for leave to use the name of the person having the legal right of action, the court will indemnify the latter, by compelling security against the hazard of costs. Taylor v. Allen, 2 Atk. 213; Pitt v. Snowden, 3 Atk. 750.

In the present case, if the court had authorized the receiver to bring the action in his own name, he could not have maintained the suit. By force of the statute an assignee is invested with the legal title to the cause of action. Until an assignee is appointed, the legal title to the assets is in the bankrupt, and it is not only the right but it is the duty of the bankrupt to bring suit for the protection and preservation of the property. Sutherland v. Davis [42 Ind. 26]; In re Steadman [Case No. 13,330]; March v. Heaton [Id. 9,061]. Where the suit must rest upon the legal title to the property, and cannot be sustained upon the possessory interest or equitable right of a receiver, it can only be brought in the name of the bankrupt, and this is such a suit.

The motion for substitution is denied.

LANSING v. MUSCATINE COUNTY. See Case No. 16,538.

LANSING (STEWART v.). See Case No. 13,432.

## Case No. 8,078.

### LANSTRAAZ v. POWERS.

[1 Cranch, C. C. 42.] [1]

Circuit Court, District of Columbia. Oct. Term, 1801.

PRACTICE AT LAW— ACTION FOR SLANDER—WHAT NECESSARY IN AFFIDAVIT TO HOLD DEFENDANT TO BAIL.

In slander, bail is not required, if the affidavit does not state the words spoken, and that the defendant is about to leave the district.

The affidavit to hold to bail, stated that by reason of slanderous words, (without stating what words,) spoken of the plaintiff as a miller, he conceived himself greatly injured, and that he had been informed the defendant was about to leave the District of Columbia. The chief judge had indorsed appearance bail for fifty dollars.

THE COURT allowed the defendant to appear on common bail.

## Case No. 8,079.

### In re LANZ.

[14 N. B. R. 159.] [2]

District Court, D. Minnesota. March, 1876.

BANKRUPTCY—PETITION OF CREDITOR — COMMERCIAL PAPER ISSUED IN COURSE OF BUSINESS— NOTE GIVEN TO PARTNER IN SETTLEMENT.

A note given by one partner, on the settlement of a copartnership business, as manufacturers, to pay for the interest of the copartner in the business, and to settle the balance appearing against him, is not the commercial paper of a manufacturer, issued in the course of his business as such.

For several years previous to June, 1873, [George] Lanz was engaged in partnership with B. H. Randall, of Saint Peter, in the manufacture and sale of boots and shoes. The partnership was dissolved in June, and after selling out the retail stock, Lanz purchased Randall's interest in the machinery, etc., and shipped it to Minneapolis, where a company was organized with Lanz as vice-

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reprinted by permission.]

president, called the "North Star Boot and Shoe Company." On December 1, 1874, Lanz and Randall had a settlement of their old partnership business, and upon an examination of the books of the firm for the purpose of ascertaining, as stated by Randall in his testimony, "how much we owed, how much he [Lanz] owed, and how much was owing us," it was found that Lanz was indebted to Randall in the sum of thirty-five hundred dollars, which amount included the purchase of Randall's interest in the machinery, and he gave his notes for this amount; one for five hundred dollars, payable in four months; two for seven hundred and fifty dollars each, payable in one year, with interest; and one for fifteen hundred dollars, payable in two years. The first note was paid, and Randall transferred the other three before maturity to A. J. Lamberton, one of the petitioning creditors, and he subsequently turned over one of the seven hundred and fifty dollar notes to Kelley, and the fifteen hundred dollar note, still not due, to Meagher. The petition alleges that the defendant, being a manufacturer, made and passed these notes in the course of his business, and has fraudulently stopped and not resumed payment of his commercial paper within a period of forty days. The defendant has denied the allegation that he is a manufacturer, and also denies that the notes were given in the course of his business as a manufacturer. The case was heard before the court without a jury.

Bigelow, Flandrau & Clark, for petitioning creditors.

Start, Gilman Clough & Lane, for debtor.

NELSON, District Judge. If the notes described in the petition were not given by Lanz in the course of his business as a manufacturer, the petition must fall, and the proceedings be dismissed. The facts in regard to the consideration for the notes and the manner they were executed are undisputed. Lanz, and the payee of the notes, Randall, had dissolved a manufacturing copartnership, and were winding up their business; the retail stock had been sold, and there remained on hand all the machinery and the unmanufactured stock to quite a large amount. Lanz purchased this at the time of the dissolution, June, 1873, and on a subsequent settlement between the partners, and after an examination of the partnership books, December 13, 1874, gave his notes to Randall for the sum of thirty-five hundred dollars, which amount included the price agreed upon for the latter's interest in the machinery, etc., and the balance found due upon the books of the firm. The first note was paid, but the other three—two for seven hundred and fifty dollars each, with interest, payable in one year from date, and one for fifteen hundred dollars, with interest, due in two years from date—are un-

paid, the latter not due. These notes were transferred by Randall to A. J. Lamberton, one of the petitioning creditors, before maturity, and subsequently two of them were passed by him to the other petitioning creditors.

I do not think, upon the facts thus proved, these notes can be regarded as the commercial paper, within the meaning of the bankrupt law [of 1867 (14 Stat. 517)] of a manufacturer, issued in the course of his business as such. They were given on the settlement of the copartnership business between the partners, upon a full examination of the firm books, and the consideration was not only the purchase price of one partner's interest in the machinery, etc., but also all balances appearing against the other partner. The consideration was entirely unconnected with any commercial transaction of a manufacturer, and the notes fall within another class than commercial paper made by a manufacturer in the course of his business as such. Entertaining this view of the case, it is unnecessary to consider the other defences urged. Petition dismissed.

## Case No. 8,080.

### LANZ v. RANDALL et al.

[4 Dill. 425; 3 N. Y. Wkly. Dig. 307; 3 Cent. Law J. 688; 14 Alb. Law J. 363; 24 Pittsb. Leg. J. 68.][1]

Circuit Court, D. Minnesota. 1876.

NATURALIZATION — DIFFERENCE BETWEEN VOTER AND CITIZEN—REMOVAL OF CAUSES—ALIENS.

1. A state cannot make a subject of a foreign government a citizen of the United States. This can only be done in the mode provided by the naturalization laws of congress.

[Cited in Croesus Mining M. & S. Co. v. Colorado Land & Min. Co., 19 Fed. 83.]

2. Citizenship and the right to vote are neither identical nor inseparable; and the constitution of Minnesota, although it authorizes resident unnaturalized foreigners to vote at state elections and hold office, does not make them citizens of the state, and such persons may remove causes to the circuit court of the United States on the ground that they are aliens, although they have resided in the state for many years and voted at elections, as authorized by the state constitution, or held office under the laws of the state.

[Cited in Poppenhauser v. India-Rubber Comb Co., 14 Fed. 708; Maloy v. Duden, 25 Fed. 673; Betzoldt v. American Ins. Co., 47 Fed. 706.]

[Cited in State v. Bo͏rd, 31 Neb. 711, 48 N. W. 739, and 51 N. W. 602.]

[See Baird v. Byrne, Case No. 757.]

On motion by the defendant to remand the cause to the state court. It was removed to this court by the plaintiff, on the ground that he was an alien, being a subject of the grand duke of Mecklenburg. The defendants are citizens of Minnesota. The removal was under the act of March 3, 1875 [18 Stat. 470].

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 14 Alb. Law J. 363, and 24 Pittsb. Leg. J. 68, contain only partial reports.]